UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
<u>OCALA DIVISION</u>

UNITED STATES OF AMERICA,

v.

MATTHEW ALLEN GAHAN

Defendant.

Case No.:5:23-cr-91-JA-PRL-1

**MATTHEW ALLEN GAHAN Sentencing Memorandum in Aid of Sentencing**

MATTHEW ALLEN GAHAN, by and through his undersigned attorney, respectfully submits his Sentencing Memorandum asking this Court to impose a reasonable sentence that is "sufficient, but not greater than necessary, to comply with [the purposes of sentencing]." *See* 18 U.S.C. § 3353(a). This Court should properly impose the least severe sentence necessary to satisfy the four purposes of sentencing-punishment, deterrence, protection of the public and rehabilitation. For the reasons set forth herein, the defendant submits a sentence below the advisory sentencing guidelines is appropriate to satisfy these purposes.

**<u>BACKGROUND</u>**

On September 13, 2023, Matthew Gahan was arrested by federal authorities and detained. On September 19, 2023, a federal grand jury in the Middle District of Florida, Ocala Division, returned a one-count Indictment for on or about September 13, 2023, Possession of Prepubescent Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), a Class C Felony punishable by up to twenty (20) years imprisonment/$250,000 fine. On December 12, 2023, a federal grand jury in the Middle

1

District of Florida, Ocala Division, returned a Superseding Indcitment adding Count 2: On or about May 13, 2023, and continuing through on or about May 25, 2023, Production of Child Pornogrpahy in violation of 18 U.S.C. § 2251(a) and (e), a Class B Felony, punishable by fifteen (15) years to thirty (30) years imprisonment/$250,000 fine.

On February 20, 2024, Mr. Gahan appeared before U.S. Magistrate Judge Phillip R. Lammens and entered a plea of Guilty to Counts One and Two of the Superseding Indictment pursuant to a written plea agreement. On March 18, 2024, this Court accepted Mr. Gahan's Guilty plea and adjudged him guilty.

On June 6, 2024, Mr. Gahan again entered a plea of Guilty to Counts One and Two pursuant to an amended Plea Agreement that corrected the maximum penalties for Count One of the Superseding Indictment, which were inadvertently understated in the original plea agreement. Aside from this correction, the remaining terms in the amended plea agreement are identical to the original plea agreement.

Pursuant to Rule 11(c)(1)(B), the government agrees to recommend, or agrees to not oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply. Such recommendation or request does not bind the Court. PSR, page 4 ¶ 9.

At or before the time of sentencing, the U.S. Attorney's Office will advise the Court of the nature and extent of the cooperation and assistance provided by the defendant pursuant to the cooperation agreement. If the U.S. Attorney's Office determines, in its sole discretion, that the defendant has provided substantial assistance in

the invesitigation or prosecution of other persons who have committed crimes, it may, in its sole discretion, recommend a downward departure. USSG § 5K1.1 and or 18 U.S.C. § 3553 (e). PSR, page 4 ¶ 10.

The Pre-Sentence Investigation Report (PSR) prepared by Supervisory United States Probation Officer Jessee Shifflett calculated his total offense level as a 43 and a criminal history category of I. PSR at ¶ 86. Thus, according to the PSR, Mr. Gahan faces an advisory guideline sentencing range of life. However, the statutorily authorized maximum sentences are less than the minimum of applicable guideline range; therefore, the guideline term of imprisonment is 600 months. USSG § 5G1.2(b).

Undersigned Counsel for Mr. Gahan has separately filed an Objection to the four (4) level enhancement on PSR page 9 ¶ 41 regarding a 4-level increase pursuant to USSG § 2G2,2(b)(4)(A), If the offense involved material that portrays (A) sadistic or mascochictic conduct or other depictions of violence. If the Court ruled in favor of the defendant, the guidelines would reflect a Total Offense Level of 38, and a Guideline range of 235 to 293 months.

## MEMORANDUM OF LAW

In *Conception v. United States*, 142 S.Ct. 2389 (2022), the Supreme Court reaffirmed three principles of federal sentencing.

First, the Court concluded that "[t]here is a longstanding tradition in American law, that a Judge at Sentencing considers the whole person before him or her "as an individual."" *Conception*, 142 S.Ct at 2395 (citing *Koon v. United States*, 518 U.S. 81, 113 (1996)). Thus, a Court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that

3

sometimes migitate, sometimes magnify, the crime and punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007).

Pursuant to its commandment of individualized sentencing, the Court's second principle encouranges a district court judge to exercise "'wide discretion in the sources and types of evidence used' to craft appropriate sentences." *Conception,* 142 S.Ct. at 2395-6. *See also Pepper v. United States*, 562 U.S. at 488 (2011) ("Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that punishment will suit not merely the offense but the individual defendant").

Finally, the third principle requires a sentencing court to consider the defendant as he appears before it on the day of sentencing, "not on the date of his offense or the date of conviction." *Id.* (citing *Pepper*, 562 U.S. at 492).

Consistent with these three principles, 18 U.S.C. § 3553(a), requires sentencing courts to consider not only the advisory Guidelines range, but also factors of a specific case through the lens of seven factors as discussed below. *See* 18 U.S.C. § 3553(a)(1)-(7). The factors set forth under § 3553 recognize that a court should consider a broad range of information in determining a defendant's sentence.

Perhaps the most explicit recognition of this principle is found in the statutory requirement that "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." 18 U.S.C. §3661.[1] A sentencing judge's overarching duty under § 3553(a) [is

---

[1] The Supreme Court has contrasted the different limitations on presentation of evidence at trial and sentencing: "Highly relevant-if not essential to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's lifrequire e and characteristics." *Williams*, 337 U.S. at 247.

4

to] impose a sentence sufficient, but not greater than necessary. *See Pepper*, 562 U.S. at 476.

In determining what sentence is sufficient but not greater than necessary to comply with § 3553(a)(2) purposes, the Court must consider the factors listed in § 3553(a). These factors are:

(1) the nature and circumstances of the offender and the history and characteristics of the defendant;
(2) the need for the sentence imposed to comply with the purposes of sentencing;
(3) the kinds of sentences available;
(4) the kind of sentence and the sentencing range established under the sentencing guidelines;
(5) any pertinent policy statement issued by the Sentencing Commission;
(6) the need to avoid sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims

18 U.S.C. § 3553(a)(1)-(7).

Neither the statute nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. After calculating the range prescribed by the guidelines, the Court should consider the factors set forth in 3553 before imposing sentence. The sentence will be affirmed as long as it is within the statutorily prescribed range and is reasonable. *United States v. Booker*, 125 S.Ct 738, 764 (2005).

Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing is the overriding principle set forth in subsection (2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense;
(B) to afford adeuqte deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). Applying the sentencing factors to Mr. Gahan's circumstances, it becomes clear that a sentence below the advisory guideline range is appropriate to serve the purposes of sentencing.

  **1(A). The Nature and Circumstances of the Offense**

  Mr. Gahan recognizes the seriousness of his offenses and takes full responsibility for his actions. As stated in Officer Shifflett's Pre-Sentence Investigation Report, p. 8 ¶ 33, "On March 20, 2024, United States Probation Officer Clark interviewed the defendant in the presence of his counsel. During the interview, the defendant admitted to the conduct described in the Factual Basis of the plea agreement." This case involves several foreign country law enforcement agencies. In December of 2022, Operation Rescue Me (Units within the FBI and U.S. Agencies that work with field offices and international partners in locating and identifying victims of crimes against children) attended an International Law Enforcement Victim Task Force ("VIDTF") with multiple foreign law enforcement partners as part of an ongoing international operation that targeted multiple dark web network websites known for posting child sexual abuse material (CSAM). The operation specifically focused on dark web websites involving users who posted "capping" files and links. Capping is when children commit sexual acts over live stream while someone screen captures or records a video of the acts. In May of 2023, the Ocala FBI Resident Agency was notified that Matthew Allen Gahan was an active member of four websites on the Tor (a type of browser with access to the dark web) network (Website A, Website B, Website C and Website D. It was discovered that

Mr. Gahan had been active at times on these various websites when they were up and operational between April of 2019 through November of 2022. It was determined through investigative means that Mr. Gahan utilized usernames "soldsoultohell" on Website A (Australia) and "wedgie" on Websites B, C and D in the Tor network based on a provided email address and Snapchat account username. Based on this information, the FBI began an investigation into Mr. Gahan and his activity on these four websites. The Tor network "dark web" is designed specifically to facilitate anonymous communication over the Internet, making it difficult if not near impossible for traditional Internet Protocol (IP) addressed-based identification techniques for law enforcement to be effective. A protonmail account from Website A was determined to be associated with Mr. Gahan and an IP addressed assigned to Mr. Gahan's home in Summerfield, Florida. Postings using this username were reviewed by the FBI for various chats and posts on various dates prior to the website seizure by Brazil law enforcement in 2019. Website B was seized by German law enforcement in 2021, after its launch in 2019, presumably after Website A was seized. It was discovered that Mr. Gahan had been active on Website B by communicating with others; sharing CSAM and discussing a sexual fetish for "wedgies." In May of 2023, Australian law enforcement provided local FBI Agents with content and activity on these two Tor websites, posted by who is believed to be Mr. Gahan given the user name "wedgie" and similar chats and postings. On September 13, 2023, FBI Agents executed a search warrant on Mr. Gahan's residence (his mother's residence) and seized two desktop computers; two laptop computers; three hard drives and one hard drive operating as a "virtual machine." An initial forensic review revealed several CSAM videos. On the same date, FBI Agents contacted Mr. Gahan at his employment and

executed a search warrant of his Samsung Galaxy cell phone. Later forensic review of the desktop computer labeled "Samsung Evo 970" revealed over 600 videos and/or images of CSAM. Several pieces of material reviewed revealed many communications with a specific username and recorded calls on various dates in May of 2023. After FBI Agents were able to identify this individual, G.S. was interviewed on December 4, 2023. G.S. disclosed knowledge of Mr. Gahan and communication via Discord and Snapchat for one and a half years. G.S. was 14 years old at the time and advised law enforcement that they initially began a friendship that evolved into a romantic relationship (it is undisputed that G.S. was at all times in a different country and there was never an in-person meeting). G.S. described performing sexual acts on themselves that would occur via livestream and that G.S. was unaware that Mr. Gahan was recording or had recorded any video calls.

    1(B).   **History and Characteristics of the Defendant**

Before the Court is Matthew Allen Gahan, a 25 year old white male, born on July 21, 1999, to the former relationahip between Cathleen Burham Mathis, age 50 and Allen Gahan, age 43. Allen Gahan is self-employed as a landscaper and resides in Belleview, Florida. Cathleen Mathis is a licensed practicing nurse and self-employed selling soaps and candles and resides in Summerfield, Florida. The defendant has a close relationship with his mother and she remains supportive of him after his arrest for these offenses, and communicate daily even though he has been incarcerated and detained since his arrest on September 13, 2023. Mr. Gahan has occasional contact with his father, but although he and his father are working on their relationship and speak routinely, his father's lack of involvement and commitment created constant disappointment. Mr. Gahan has three maternal half siblings and three paternal half siblings. Once brother is currently

incarcerated in the Florida Department of Corrections. A brother in his 40s is employed as a cook; a brother in his 30s is employed by his mother and both reside in Summerfield, Florida. Brothers ages 16 and 14 are students and reside with his father in Belleview, Florida. Mr. Gahan grew up in the same household as his material siblings but has had infrequent contact with his paternal sublings. Mr. Gahan advised Officer Clark on PSR page 12 ¶ 64, "[a]s a child, he was "bullied" by his brothers and experienced frequent physical abuse such as being punched or hit but he denied being physically abused or neglected by an adult." Mr. Gahan has no children. Mr. Gahan is a lifetime resident of Florida and except for three months in 2023, has lived with his mother in Summerfield, Florida. Mr. Gahan advised Officer Clark that while detained at the Marion County Jail, he has been prescribed 25 mg of Zoloft, once a day, to relieve anxiety and depression. Marion County Jail records indicate that on December 18, 2023, Mr. Gahan presented with a request to see a psychologist indicating that he was feeling depressed and wanted to ensure his mental status was "okay," Once February 14, 2024, Mr. Gahan completed a psychiatric evaluation and was diagnosed with major depressive disorder, severe and adjustment disorder with anxious mood, for which he was prescribed hydroxyzine HCL tablet, 25 mg, twice daily and Zoloft, 25 mg. Mr. Gahan graduated from Lake Weir High School in Ocala, Florida in 2017 and enrolled at College of Central Florida, where he was pursuing an associate degree in physical therapy. Records from College of Central Florida indicate that Mr. Gahan was enrolled from summer semester of 2018 until December of 2023, failing to complete coursework during the fall semester due to his arrest and detention for the instant case. In 2023, prior to his arrest for the instant case, Mr. Gahan was a full-time unpaid intern at TLC Therapy in Summerfield, Florida.

9

Mr. Gahan is now a convicted felon and is facing a potential fifty (50) year incarceration sentence, so his career path to being licensed in physical therapy is greatly at risk.

## 2. The Need for the Sentence Imposed

**A.** *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*

In imposing a just sentence, this Court should consider the significant punishment resulting from the collateral consequences of Mr. Gahan's felony convictions. Considering such collateral consequences is consistent with the statutory requirement that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C § 3661. *See also Conception*, 142 S. Ct. at 2396 ("It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained.").

Prior to the instant offense Mr. Gahn had no criminal history. Despite what are mitigating circumstances that will be addressed in subsequent paragraphs that should be known to the Court in making an informed decision at Sentencing, Mr. Gahan will also be a convicted sex offender for the rest of his life. This is particularly harsh punishment. *United States v. Garate*, 543 F. 3d 1026, 1028 (8th Cir. 2008) (noting it was appropriate for the district court to consider, under § 3553(a), the "lasting effects of being required to register as a sex offender"). Under the Sex Offender and Registry and Notification Act (SORNA), Mr. Gahan will have to:

register as a sex offender…at least once a year; report any change of address within as little as three days; produce vehicle information, a recent photograph and a DNA sample; and abide by stringent residency restrictions, which can force individuals out of urban areas, away from family and into unemployment.

Respect for the law does not appear to be an issue for Mr. Gahan. The Government at the time of filing this Sentencing Memorandum has not officially filed a Motion for recommendation of a downward departure. USSG § 5K1.1 and or 18 U.S.C. § 3553 (e). Mr. Gahan has accepted responsibility. As a result, he has received a three-level reduction in his offense level. PSR ¶50; 51. But, there is additional mitigation that the Court should be aware of, worthy of a downward departure and/or variance in this case as a result of his cooperation with the United States. Since his arrest; hiring counsel and counsel having a chance to attend two (2) separate evidence viewing at the FBI's field office in Ocala, Mr. Gahan has provided cooperation and assistance pursuant to the cooperation agreement in three (3) separate proffer sessions at the Marion County Jail with the two (2) case agents with the FBI. Undersigned Counsel was physically present during all three proffers totaling about nine (9) hours. Counsel for the Government was present during the almost three (3) hour proffer session held on January 18, 2024, prior to the entry of a Plea. During this proffer Mr. Gahan described various Tor sites that he had preciously used and been active on; search terms and directories that are of interest to the Government; names of some sites that had already been known to the United States Government and seized by domestic or foreign law enforcement; user and possible indicators of indenties and countries of likely origin of known moderator/hosts or ex-moderators. Specific information was provided as to "keys" to recover documents on his seized virtual machine that was still being revewed by FBI Analysts including usernames;

11

passcodes; backup passcodes; signed permission for the Government to assume his identify for investigative purposes; additional known information of persons who Mr. Gahan had extensive communication with on the various 4 Websites; steps to avoid detection and how to gain access and trust to enter these Websites known to various Governments' and new sites that were Meta testing or in its infancy prior to his arrest in September of 2023. After the entry of the Plea, two (2) more proffer sessions were held. On February 7, 2024, Undersigned Counsel and 2 FBI Agents met with Mr. Gahan at the Marion County Jail for almost 3 hours. It was revealed that information provided in the 1st proffer lead to a lead of an individual in the Country of Mexico and investigative information was shared to foreign authorities based on Mr. Gahan's cooperation. With the aid of a laptop, Mr. Gahan was able to provide and access numerous emails; social accounts; text documents with mega keys on the seized virtual machine. Given the nature of the Tor websites and dark web it was necessary to stop the proffer at that point to obtain necessary clearance by the Government to continue with cooperation. On March 28, 2024, Undersigned Counsel and the same 2 FBI Agents met with Mr. Gahan at the Marion County Jail again, for about 3 hours. Mr. Gahan was able to use a laptop with the supervision of law enforcement to explain how to gain access to certain dark web sites know to Mr. Gahan and onion centers (sharing community directories) for law enforcement to investigate. Mr. Gahan from an account of his, was able to access and navigate a link sent to him by one of the moderators/host of a site that was in the Meta stages prior to his arrest in September of 2023. This new site to the knowledge of the FBI Agents had not yet been infiltrated and was of serious interest of a foreign law enforcement agency. Once able to access the dark web site, Mr. Gahan signed over a

written agreement for the FBI to take over his access privileges for investigative purposes. What is known to Undersigned Counsel, this information was relayed to a foreign law enforcement agency. Mr. Gahan's accounts and passwords for other dark web sites allowed the FBI Agents to gain access them, that were suspected to be under investigation by other foreign law enforcement agencies. Mr. Gahan showed the FBI Agents who to search and gain access to bookmarks and links on his virtual machine and provided keywords and language to pass along to further any ongoing or future investigations. The Agents seemed very impressed how Mr. Gahan openly and truthfully cooperated in providing them investigative tools to attempt to infiltrate Websites/sharing platforms; left them bookmarks to revisit to further investigate and to re-enter to use for investigative purposes of the United States Government and/or Foreign Governments, including several chat rooms that would be of interest to law enforcement. Mr. Gahan also provided the FBI Agents with several written pages of information and tips/language to use/techniques to help infiltrate these dark websites. Although Mr. Gahan desired and was very willing to continue to meet with the FBI Agents in the hopes to continue to provide valuable information and assist, Undersigned Counsel contacted the Agents several times after March 28, 2024 but was informed that the information provided by Mr. Gahan was passed on to other agents/agencies (no specifics) that they believed could be more effective with that information (Undersigned Cousnel suspects foreign law enforcement).

For a Tor network user's communicatons to be routed through the Tor network, a Tor user has to share its IP address with the Tor network relay computers. This is a very complex level of communication such to avoid detection by ordinary investigative

13

techniques and most very skilled investigators in domestic and international enforcement. The overwhelming amount of information Mr. Gahan has provided to the FBI, including access to a Tor website that is being investigated currently by foreign law enforcement (literally with a computer in front of him at the Marion County Jail with supervision of two FBI agents), agencies, has only been discovered here due to Mr. Gahan's cooperation to provide paths; links; known hosts and usernames associated in the past with CSAM distribution and production in the hopes that the pathway has been cleared and open for Federal Agents to infiltrate these Tor Websites; get past the typical walls of secrecy and even providing numerous writings that are effective language for Agents to use to build trust and rapport with active members of these Tor websites and communities. Considering the nature of the information provided and vast worldwide extension and investigative reach outside of the United States Government's jurisdiction and authority, at this point it cannot be reported to the Court whether Mr. Gahan's cooperation resulted in criminal charges having been brought against any individual or entity or whether the cooperation caused or contributed to a defendant entering a plea of guilty. Undesigned Counsel requests the right to reserve until Sentencing when it is a more controlled environment and possibly sealed information going more into detail the extent of Mr. Gahan's cooperation; assistance and detailed information provided to the United States Government, with sufficient detail to allow the Court to assess the value of the cooperation to the Government and extent to which the cooperating defendant was placed at risk due to his cooperation.

      A fifty (50) year sentence in accordance with the stated guidelines does not appear necessary to comply with these purposes of sentencing. Mr. Gahan believes that

the Court being fully informed of his cooperation and provided valuable assistance that global governmental agencies not just the United States can use or attempt to use is necessary for the Court to detrermine that just punishment for Mr. Gahan can be achieved through a sentence below the stated guidelines.

### B. To Afford Adequate Deterrence to Criminal Conduct

Mr. Gahan has never been faced with anything remotely so serious in his life as this prosecution. This prosecution reveals a period time where Mr. Gahan was active on TOR sites and involved in acts that can be considered unlawful even though most participants were either willing participants or some that were unknowingly recorded, but all still unlawful acts if involved minors. All that Mr. Gahan has now been through and will continue to go through will adequately deter him from engaging in criminal conduct again. Therefore, it appears that a sentence below the advisory sentencing guideline range is appropriate to satisfy this purpose of sentencing.

### CONCLUSION

Based on the foregoing, Matthew Allen Gahan, begs the Court to consider a guideline sentence less than 600 months or fifty (50) years. Should the Court consider this sentencing range and the totality of Mr. Gahan's circumstances and cooperation/assistance, he submits a variance is appropriate and respectfully requests a sentence below the advisory sentencing guideline range. Should this relief be granted, the sentence would be sufficient, but not greater than necessary to serve the purposes of sentencing.

DATED this 8th of August, 2024.

By:  /s/ *Sean Landers*
_____
SEAN W. LANDERS, ESQUIRE
FL Bar No.: 40366
The Baez Law Firm
250 N. Orange Ave., Unit 750
Orlando, FL 32801
Tel.: (407) 705-2626
Fax: (407) 705-2625
sean@baezlawfirm.com
admin@baezlawfirm.com

## CERTIFICATE OF SERVICE

On August 8, 2024 using CM/ECF, I electronically filed the foregoing with the Clerk of the Court, which will send notice to Plaintiffs.

DATED this 8th day of August, 2024.

*/s/ SEAN W. LANDERS, ESQ.*
SEAN W. LANDERS, ESQUIRE
FL Bar No.: 40366
The Baez Law Firm
250 N. Orange Ave., Unit 750
Orlando, FL 32801
Tel.: (407) 705-2626
Fax: (407) 705-2625
sean@baezlawfirm.com
admin@baezlawfirm.com